UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RYAN O. GITTENS,

                       Petitioner,

-against-

ERIC HOLDER, Attorney General,

                       Respondent.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
10-CV-849 (CBA) (LB)

AMON, Chief United States District Judge:

Ryan Gittens, pro se, who is currently incarcerated pursuant to a federal criminal judgment in McRae, Georgia, has petitioned the Court for an order directing the U.S. Attorney General to lift the immigration detainer lodged against him.

In reply papers that the Attorney General has not answered, Gittens also asks for relief in connection with a Form N-400 application for naturalization that was administratively closed for failure to attend an interview and then dismissed when Gittens did not move to reopen the application within one year from the date of closure. Gittens wants an order declaring him a United States national. He also wants an order compelling the Attorney General to adjudicate the N-400 application on the merits.

For the reasons that follow, the requests for relief are denied.

## BACKGROUND

Gittens, a native and citizen of Barbados, was admitted to the United States as a lawful permanent resident in January 1984. From 1984 until sometime before 1999, he lived in Brooklyn, New York. Gittens alleges that in 1997 he filed an N-400 application for

1

naturalization with Immigration and Naturalization Service ("INS"). Gittens provided fingerprints in connection with that application.

Sometime in 1999, INS asked Gittens to provide a second set of fingerprints, because apparently the agency had lost the first. Gittens, who had moved to Las Vegas, Nevada, returned to New York to provide fingerprints. He says that, while in New York, he told INS to continue sending mail to his grandmother's house in Brooklyn.

Gittens alleges that soon after he returned to Las Vegas, his mother—who was also living in Las Vegas—officially changed her address with INS. Gittens says that, although nobody told INS to do so, the agency changed Gittens's address, too. But, for some reason, INS recorded an address for Gittens at which neither he nor his mother received mail.

Gittens alleges that, as a result of the address change, he stopped receiving mail from INS. And because he stopped receiving mail, he never received notice of a December 1999 N-400 application interview. Consequently, Gittens, allegedly through no fault of his own, missed that interview.

About one year later, pursuant to INS regulations, the agency administratively closed the application. A form attached to Gittens's petition indicates that, for one year from the date that it was closed, he had the ability to move to reopen the closed application. It further notes that failure to move to reopen within one year results in a finding that the application has been "abandoned and may not be reopened at all." See 8 C.F.R. § 335.6(c) ("If the applicant does not request reopening of an administratively closed application within one year from the date the application was closed, the Service will consider that application to have been abandoned, and shall dismiss the application without further notice to the applicant."). All indications are that Gittens's application was deemed abandoned and dismissed.

Gittens was clearly convicted of a crime at some point after his application was closed and dismissed, but the motion under consideration does not provide any details. The Attorney General indicates that Gittens was convicted in March 2004, in the U.S. District Court for the Northern District of New York, of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841. The Attorney General further states that Gittens received a sentence of imprisonment of 46 months. Although that sentence (which is the only one mentioned by the Attorney General or Gittens) should have expired by now, it is undisputed that Gittens is currently incarcerated. According to the Bureau of Prisons inmate locator website, Gittens will not be released from prison until September 5, 2011.

In September 2007, Immigrations and Customs Enforcement (an INS successor, "ICE") filed a detainer with the Bureau of Prisons, indicating that the agency had begun an investigation to determine whether Gittens is subject to removal.

On February 1, 2010, Gittens filed in this Court a motion styled a "petition pursuant to 8 U.S.C.A. 1252(B)(5)." In it, he asked for an order compelling the Attorney General "to remove the DHS / INS detainer lodged against the petitioner." Gittens argued that he was a United States national and thus not subject to removal.

The Court ordered the Attorney General to respond and he did so, by papers dated April 6, 2010. The Attorney General construed Gittens's motion as a petition for a writ of habeas corpus, 28 U.S.C. § 2241, that asked the Court to prevent ICE from taking custody of Gittens, initiating removal proceedings, and ordering his removal.

The Attorney General argued that the § 2241 petition should be denied for four independent reasons: (a) Gittens is not in ICE custody for purposes of § 2241; (b) even if Gittens is in ICE custody, the only proper ICE respondent is located in Pennsylvania, outside the

3

jurisdiction of the Court; (c) 8 U.S.C. § 1252(g) prevents the Court from blocking ICE from initiating removal proceedings; and (d) insofar as Gittens is challenging a final order of removal not yet entered, he needs to exhaust his administrative remedies (i.e. challenge the order before an immigration judge and then the Board of Immigration Appeals) before filing suit in federal court.

Gittens filed reply papers in April 2010 in which he responded to the "opposition to the habeas corpus." In it he appeared to concede that the Court lacked jurisdiction to grant habeas relief of any sort and instead asked for a "declaratory judgment" that he is a United States national.

In June 2011, Gittens filed papers requesting an order compelling the Attorney General to adjudicate his N-400 application on the merits. The Attorney General has not responded to the replies.

By letter dated July 1, 2011, Gittens informed the Court that ICE had initiated removal proceedings against him, notifying him of a July 6, 2011 hearing to be held at the institution in which he is currently incarcerated.

## DISCUSSION

The Court considers in turn each of the three forms of relief that Gittens's various filings, liberally construed, request from the Attorney General: (a) an order lifting the detainer currently in place; (b) a declaration that Gittens is a United States national; and (c) an order compelling the Attorney General to adjudicate the dismissed N-400 application.

### I. Lift of Detainer

The Court agrees with the Attorney General, and apparently Gittens, that the Court lacks the authority to enjoin or otherwise act on the detainer that is currently in place.

As an initial matter, the Court agrees that the motion under consideration is properly considered a § 2241 petition. See, e.g., Henry v. Chertoff, 317 F. App'x 178, 179 (3d Cir. 2009) ("Construing Henry's complaint [seeking to challenge an immigration detainer on the ground that he is a United States citizen] liberally, it is best read as a habeas petition challenging the detainer."); Henriquez v. Ashcroft, 269 F. Supp. 2d 106, 107 (E.D.N.Y. 2003) ("Petitioner is also challenging his possible future detention and removal upon the execution of an INS detainer, and the court construes that portion of his petition as seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241.").

And the Court agrees, as Gittens appears now to concede, that the detainer does not render Gittens in ICE custody such that he can challenge the detainer via a § 2241 petition. Neither does the fact that removal proceedings have begun since he filed his petition. See Bell v. INS, 292 F. Supp. 2d 370, 373–74 (D. Conn. 2003); Henriquez, 269 F. Supp. 2d at 108–09; Kendall v. INS, 261 F. Supp. 2d 296, 300–01 (S.D.N.Y. 2003); Dearmas v. INS, No. 92 Civ. 8615, 1993 WL 213031, at *3 (S.D.N.Y. June 15, 1993) ("The Court agrees with the clear majority of courts which have found that the filing of a detainer does not constitute 'custody' by the INS for purposes of habeas jurisdiction.").

**II. Declaration**

Gittens also asks for a judgment declaring that he is a United States national. He cites 8 U.S.C. § 1252(b)(5) as providing the Court jurisdiction to enter such a judgment. He also mentions in passing the federal declaratory judgment statute. 28 U.S.C. § 2201.

Section 1252 of Title 8 does not apply here. That section provides for judicial review of removal orders in the federal courts of appeals. 8 U.S.C. § 1252(a)(1), (5). Section 1252(b)(5)

specifically authorizes a court of appeals reviewing a final order of removal to decide a nationality claim in the absence of a genuine dispute of material fact. 8 U.S.C. § 1252(b)(5)(A).

If, however, a genuine dispute of material fact exists, the court of appeals must transfer the proceeding to the district court for a determination "as if an action had been brought in the district court" under 28 U.S.C. § 2201. 8 U.S.C. § 1252(b)(5)(B). Relevant here, the "petitioner may have such nationality claim decided only as provided in this paragraph." 8 U.S.C. § 1252(b)(5)(C).

Gittens cannot use this provision to secure a declaratory judgment. It is undisputed that Gittens has not been the subject of a final order of removal; that, consequently, he has not challenged any final order of removal in federal court; and that no court of appeals has transferred any challenge of a final order to this Court. Section 1252(b)(5) thus does not permit this Court to issue an "order declaring [Gittens] to be a 'national' of the United States." Roberts v. INS, 372 F. App'x 921, 924–25 (11th Cir. 2010).

The Court notes further that, to the extent Gittens relies on the declaratory judgment statute to support his claim for a declaration, the Court still lacks the authority to grant his application. Gittens must raise his claim in the removal proceeding that has begun. Id. at 925 (declaratory judgment action must await final order of removal), citing McGrath v. Kristensen, 340 U.S. 162, 168–69 & n.10 (1950); Chau v. INS, 247 F.3d 1026, 1028 n.2 (9th Cir. 2001) ("once removal proceedings have been initiated, a petition for review under 8 U.S.C. § 1252(b)(5) is the only avenue by which a person may seek a judicial determination of his or her status as a national of the United States").

### III. Order Compelling Adjudication on the Merits

Finally, and relying upon 8 U.S.C. § 1447(b), Gittens asks for an order compelling the Attorney General to adjudicate the dismissed N-400 application on its merits.

Section 1447(b) permits an individual who has filed a naturalization application, has been the subject of a completed "examination" pursuant to 8 U.S.C. § 1446, and who has not timely received a determination on his application, to "apply to the United States district court for the district in which the applicant resides for a hearing on the matter."

Section 1447(b) has no application to this case. First, this is not obviously a case in which INS has delayed providing a determination on Gittens's application. INS has acted on Gittens's petition; it administratively closed it for failure to move to reopen after missing a scheduled interview. And then, one year later, it apparently deemed it abandoned and dismissed the application. 8 C.F.R. § 335.6. So it is not at all clear that Gittens has an application pending that the Attorney General can be ordered to adjudicate.

Second, even if the application were still in some sense pending, the statute would not by its terms apply. This is because INS never completed an examination of Gittens, who never attended his interview. See Litvin v. Chertoff, 586 F. Supp. 2d 9, 10 (D. Mass. 2008) ("This court would not have jurisdiction directly under § 1447, therefore, because Plaintiff has not reached the interview stage of the adjudication process."); cf. Taalebinezhaad v. Chertoff, 581 F. Supp. 2d 243, 244 (D. Mass. 2008) ("Because USCIS had not determined Taalebinezhaad's N-400 application within 120 days of Taalebinezhaad's naturalization interview, Taalebinezhaad was entitled by statute to apply to the federal district court for a hearing on the matter.").

Gittens has offered no other theory on which he is at this point entitled to an order compelling adjudication on the merits of his dismissed application.

## CONCLUSION

For the reasons stated, the requests for relief are denied. The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      July 27, 2011

/S/
_____
Carol Bagley Amon
United States District Judge